

**Superior Court of the District of Columbia**
**Washington, D.C. 20001**

**Anita M. Josey-Herring**
   **Chief Judge**

(202) 879-1600

CERTIFIED MAIL

May 23, 2022

Kavita Kalsy
300 New Jersey Ave, NW
Suite 900
Washington, DC 20001

ALSO SENT VIA EMAIL: kavita@kavitakalsy.com

Re: Suspension or Removal from Criminal Justice Act Panel

Dear Ms.Kalsy:

Please be advised that pursuant to Sup. Ct. Crim. Rule 44-(I) I have appointed a committee of judges consisting of Judge Becker, Judge Edelman and Judge Epstein to determine whether it is appropriate to suspend or to remove you from the Criminal Justice Act Panel. The bases of the inquiry are the matters set forth in the attached complaint and letter dated October 1, 2021 from then co-chairs of The CJA Panel Committee, Judges McKenna and Krauthamer.

Sincerely,

Anita Josey-Herring
Chief Judge

CC:

Judge Becker
Judge Edelman
Judge Epstein



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**

**WASHINGTON, D.C.  20001-2131**

CERTIFIED MAIL

May 23, 2022

Kavita Kalsy
300 New Jersey Ave, NW
Suite 900
Washington, DC 20001

ALSO SENT VIA EMAIL:  kavita@kavitakalsy.com

       Re: Suspension or Removal from Criminal Justice Act Panel

Dear Ms. Kalsy:

       We have been appointed by the Chief Judge to decide whether you should be suspended or removed from the Criminal Justice Act Panel based on the matters set forth and described in the attached complaint.

       Please be advised that the hearing is June 15, 2022 at 4:15 pm,  in person,  Courtroom 201,  DC Superior Court, at which time you will be given an opportunity to respond to the complaint.

Sincerely,

Judge Becker

Judge Edelman

Judge Epstein

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CRIMINAL JUSTICE ACT ATTORNEY SELECTION COMMITTEE**
**SUPERIOR COURT CRIMINAL RULE 44-I HEARING**

**IN RE: KAVITA KALSY**

**COMPLAINT**

In 2018, you were appointed to the Criminal Justice Act Panel as a provisional attorney.

On August 12, 2020, you submitted an application for full panel status in which you asserted that you were not able to complete the required two jury trials because of suspicious activity. You noted Covid-19 as a secondary reason. Your application raised concerns about your mental health based on answers provided.

On August 20, 2020, you met over Webex with Judges Juliet McKenna and Peter Krauthamer to discuss their concerns. During that meeting, you stated that you believed you were being followed and tracked. You stated that these experiences began in the Fall of 2015 but you only began reporting them in 2018. You claimed that people were throwing objects at you such as a penny, a feather, paper clips, trash, nails, a hammer, and a cloth elastic band, although you did not suffer any injuries. You further claimed that these incidents happened on a recurring basis in different locations— when you were leaving the DC Jail, outside the D.C. Superior courthouse and in other various locations. You noted that on April 4, 2019 you reported your concerns to Thomas Hedgepeth. You indicated that the last such occurrence happened the day before this conversation with Judges McKenna and Krauthamer.

Upon further inquiry, you switched the topic and made a number of bizarre statements, claiming that your CJA status made you a contractor to the federal government, that the Federal Acquisition Regulation applied to the CJA panel, and that you must be able to store data securely. Your thinking was perceived to be disorganized, illogical, and paranoid.

1

On September 4, 2020, Judges McKenna and Krauthamer had a second meeting with you over Webex.  Your statements again reflected disorganized, bizarre, and potentially paranoid statements.  You once again reiterated that you were a government contractor, a Department of Justice vendor and began listing rules of professional responsibility that did not apply to the situation.  You talked about encrypted emails, risk management, and the cost of doing business, none of which was responsive to the concerns raised.

On September 25, 2020, you met with Judges McKenna and Krauthamer on Webex.  Once again you persisted in talking about your government contract and the Federal Acquisition Regulations.   Judges McKenna and Krauthamer told you that they had concerns about your mental health and whether you were capable of handling cases for the CJA panel.  They requested that you provide documentation of your mental health status by October 9, 2020, so that you could remain on the panel, which you agreed to provide.  Thereafter, you failed to do so.

On September 2, 2021, you resubmitted an application for full CJA panel status, despite not complying with the request to provide documentation regarding your mental health status.

On September 27, 2021, Judges McKenna and Krauthamer once again met with you over Webex to reiterate the need for a professional assessment regarding your mental health status.  You made clear that you did not intend to do so. Nonetheless, you were given until October 29, 2021 to provide the requested documentation, which you did not do.

On April 7, 2022, the new co-chairs of the CJA panel, Judges Anderson and Brandt, met with you over Webex and requested the same documentation.  You again exhibited disorganized thinking.  In particular,  you told the two judges that you believed they were asking for a bribe.

As of the date of this notice, you have not provided any documentation about your mental health status.

Based on all these events, Chief Judge Anita Josey-Herring has authorized us to convene

a Superior Court Criminal Rule 44-(I) hearing to determine whether you should remain on the

CJA panel.

May 23, 2022

_Jennifer M. Anderson_

**Judge Jennifer M. Anderson**
**Co-Chair, CJA Panel Selection Committee**

_Rainey Brandt_

**Judge Rainey Brandt**
**Co-Chair, CJA Panel Selection Committee**

3



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**

**WASHINGTON, D.C. 20001-2131**

October 1, 2021

SENT VIA EMAIL: kavita@kavitakalsy.com

Dear Ms. Kalsy-

At your request, we are setting forth in writing our previous request that you provide some documentation that you have been evaluated by a mental health provider or are receiving counseling with the D.C. Bar's Lawyer Assistance Program prior to receiving any additional appointments as a provisional member of the Criminal Justice Act (CJA) Attorney Panel.

As we discussed with you on several occasions last year, the written responses you provided in your August 12, 2020 application for full panel status raised substantial concerns about your fitness to serve as a member of the CJA Panel, and those concerns were only further heightened during our meetings with you via WebEx video. In an effort to enable you to continue as a member of the CJA Panel, on September 25, 2020 we orally requested that you provide documentation of your mental health status by October 9, 2020. No such documentation was received.

Upon receipt of your most recent re-application for full panel status on September 2, 2021, we again reached out to you to set up another video meeting for September 27, at which time we reiterated our concerns and request. At this time, if we do not receive the requested documentation from you by October 29, 2021, we will recommend to the Chief Judge that, pursuant to Superior Court Criminal Rule 44-(I), she appoint a Committee of Judges to determine whether it is appropriate to suspend or to remove you from the Criminal Justice Act Panel, or take any other appropriate action.

We are again providing you with the contact information for the Lawyer Assistance Program, which offers free and confidential mental health services to members of the D.C Bar. To access additional information about the services that they provide or to make an appointment, you may call 202-347-3131 or visit the dcbar.org website.

Sincerely-

Peter Krauthamer
Co-Chair, CJA Panels Committee
Presiding Judge, Family Court

Juliet McKenna
Co-Chair, CJA Panels Committee
Presiding Judge, Criminal Division

Kavita Kalsy
Kavita Kalsy PLLC
300 New Jersey Ave NW STE 900
Washington DC 20001
(202) 464 – 2783 (Office)
(202) 381 – 0017 (Other)
(202) 820 – 7420 (Cell)
(202) 347 – 0130 Shared Fax
kavita@kavitakalsy.com

October 9, 2020

Chief Judge Josey-Herring
Superior Court of the District of Columbia
500 Indiana Ave NW
Washington, DC 20001

Dear Chief Judge Josey-Herring:

My name is Kavita Kalsy. I am an attorney. I have a Juris Doctor and a Master of Business Administration.

I am currently a provisional member of the Criminal Justice Act Panel of Attorneys of the Superior Court of the District of Columbia. The administrative order is Superior Court of the District of Columbia Administrative Order 18-04.

I write to inquire whether oral statements that have not been identified in writing have effected a change to my eligibility to receive court appointments to new cases.

I write this letter and a First Addendum to Application of CJA Provisional Attorney for Full Panel Membership. In the First Addendum, I set forth six issues. I request a response in writing.

I look forward to hearing from you.

Respectfully submitted,

/s/

Kavita Kalsy
Sole Member and Attorney
Licensed in DC, MA, NJ, and NY

## FIRST ADDENDUM TO APPLICATION OF CJA PROVISIONAL ATTORNEY FOR FULL PANEL MEMBERSHIP

### ISSUES

Issue 1: Was I suspended from the Criminal Justice Act Panel of Attorneys of the Superior Court of the District of Columbia from Friday, August 28, 2020, to Friday, September 4, 2020?

Issue 2: Is it a requirement that I submit a waiver letter from a health professional regarding personal health information to Judge McKenna and Judge Krauthamer?

Issue 3: Is the requirement that I submit a waiver letter when such requirement is not identified in writing a prerequisite to be eligible for court appointments to new cases from Friday, September 4, 2020, to the present?

Issue 4: Was I not eligible to receive court appointments to new cases from Friday, September 4, 2020, to the present?

Issue 5: If no performance issues are alleged, is corrective action an appropriate course of action?

Issue 6: If I comply with requirements not identified in writing, is it a "favor" to a government official?

**BACKGROUND**

**Wednesday, August 12, 2020**

On August 12, 2020, I submitted an application to be a full member of the Criminal Justice Act Panel of Attorneys of the Superior Court of the District of Columbia. I submitted my application to applicant@dcsc.gov.

Question 2.d. of the application states:

2. Briefly summarize your litigation experience in the Superior Court since becoming a Provisional member of the CJA Panel, including:
    d.   a description of at least two felony jury trials in which you have been lead counsel or second chair (including the name, phone number and email address of the attorney with whom you second chaired, a description of the work you performed, and the presiding judge).

My answer to Question 2.d. of the application is:

2d.      I have not completed the requirement to be lead counsel or second chair in two felony jury trials.

A contributing factor was COVID 19.

The main reason relates to the following. In 2018, 2019 and 2020, I submitted suspicious activity reports to:
- the American University Police Department
- the Chief Security Officer at the DC Courts
- the Commonwealth of Virginia
- the Los Angeles Police Department
- the Metropolitan Police Department of the District of Columbia
- the State of Maryland

Starting January 2018 to May 2020, I attended classes through the alumni audit program at American University. I submitted suspicious activity reports to the American University Police Department. I also submitted these suspicious activity reports to comply with University policies.

In November 2019, I attended a legal program that the Administrative Office of the U.S. Courts, Defender Services Office, Training Division, hosted in Long Beach, California. I submitted a suspicious activity report to the Los Angeles Police Department.

In October 2018, I registered in the U.S. Government's System for Award Management. In October 2019, I renewed my registration in the System for Award Management. I also disclose these suspicious activity reports to comply with my obligations as a government contractor.

**Friday, August 28, 2020**

On August 28, 2020, I participated in a WebEx meeting with Judge McKenna and Judge Krauthamer. The meeting started about 11:00 am. The meeting ended around 11:40 am.

On August 28, 2020, Judge McKenna informed me that I was suspended. It was possible that the cases to which I was appointed would be assigned to another attorney or an additional attorney added to my cases.

The statement regarding suspension was an oral statement.

**Tuesday, September 1, 2020**

On Tuesday, September 1, 2020, I sent a list of my cases to Judge McKenna. I identified the cases using only the case numbers. I transmitted the list in an email attachment. Judge McKenna inquired by email about the detained case.

**Friday, September 4, 2020**

On Friday, September 4, 2020, I participated in a WebEx meeting with Judge McKenna and Judge Krauthamer. The meeting started at about 11:00 am. The meeting ended around 11:30 am.

On Friday, September 4, 2020, Judge McKenna informed me that I was no longer eligible for appointments to new cases.

On Friday, September 4, 2020, Judge McKenna and Judge Krauthamer required a writing relating to a waiver of personal health information.

Regardless of whether I provided the waiver of personal health information, it was uncertain whether I may be eligible for court appointments to new cases.

The statement regarding a waiver letter relating to a waiver of personal health information was an oral statement.

**Friday, September 25, 2020**

On September 25, 2020, I participated in a WebEx meeting with Judge McKenna and Judge Krauthamer. The meeting started about 11:00 am. The meeting ended around 11:40 am.

On September 25, 2020, I stated that a government contract is writing.

I also stated that I received a letter on letterhead (from Judge Krauthamer) stating that I completed the continuing legal education requirements. I received letters in 2018 and 2019.

Judge Krauthamer briefly mentioned the Judicial Commission on Tenure and Disabilities.

On September 25, 2020, Judge McKenna described an "independent obligation to provide assurances of the highest quality of legal representation[.]" At one point, Judge McKenna ordered me to take corrective action.

I stated, "corrective action."

Judge Krauthamer explained that examples include: not coming to court, falling asleep in court, not filing motions to suppress, and not meeting with clients (receiving complaints), "then we would ask why."

On September 25, 2020, Judge Krauthamer set forth a deadline of Friday, October 9, 2020, by close of business, to respond. If I do not respond, Judge Krauthamer stated, "we will assume you are not interested."

On September 25, 2020, Judge McKenna, Judge Krauthamer, and I exchanged oral statements relating to eligibility for court appointments to new cases.

**System for Award Management**

I assert that court appointments to new cases are also government contracts.[1] 48 C.F.R. § 2-101 (2019). A "contract .... includes ... commitments that obligate the Government to an expenditure of appropriated funds and that, except as otherwise authorized, are in writing." Id.

In October 2018, I registered in the System for Award Management (SAM).

In October 2019, I renewed my registration in the System for Award Management.

If I am active in the System for Award Management, then I am eligible to receive compensation for appointments to cases.

If I do not complete the annual registration for System for Award Management, I will not receive compensation.

The Defender Services Office in the Superior Court of the District of Columbia provides "Instructions for the DC Courts Oracle Supplier Request Form[.]" It states: "All DC Courts suppliers are required to set up and maintain an active SAM registration by May 2018."

**Federal Acquisition Regulation**

The Federal Acquisition System is set forth in Title 48 of the Code of Federal Regulations.

---

[1] **2.101  Definitions.**=

*Contract* means a mutually binding legal relationship obligating the seller to furnish the supplies or services (including construction) and the buyer to pay for them. It includes all types of commitments that obligate the Government to an expenditure of appropriated funds and that, except as otherwise authorized, are in writing. In addition to bilateral instruments, contracts include (but are not limited to) awards and notices of awards; job orders or task letters issued under basic ordering agreements; letter contracts; orders, such as purchase orders, under which the contract becomes effective by written acceptance or performance; and bilateral contract modifications. Contracts do not include grants and cooperative agreements covered by 31 U.S.C. 6301, *et seq.* For discussion of various types of contracts, see part 16.

*Contract modification* means any written change in the terms of a contract (see 43.103). 48 C.F.R. § 2-101 (2019).

The Federal Acquisition Regulation sets forth procedures regarding notification of contract changes.[2] 48 C.F.R. § 431.104 (2019). I notify the Government in writing to request evaluation of an alleged change that is not identified in writing and signed by the Government.

It appears that the Chief Judge is the contracting officer in this matter. I am writing this letter and First Addendum to the Chief Judge.

I seek appointments to new cases. I am seeking business with the government.[3]

---

[2] **43.104   Notification of contract changes.**

(a) When a contractor considers that the Government has effected or may effect a change in the contract that has not been identified as such in writing and signed by the contracting officer, it is necessary that the contractor notify the Government in writing as soon as possible. This will permit the Government to evaluate the alleged change and (1) confirm that it is a change, direct the mode of further performance, and plan for its funding; (2) countermand the alleged change; or (3) notify the contractor that no change is considered to have occurred.

(b) The clause at 52.243-7, Notification of Changes, which is prescribed in 43.107, (1) incorporates the policy expressed in paragraph (a) above; (2) requires the contractor to notify the Government promptly of any Government conduct that the contractor considers a change to the contract, and (3) specifies the responsibilities of the contractor and the Government with respect to such notifications.

[48 FR 42386, Sept. 19, 1983, as amended at 56 FR 41744, Aug. 22, 1991]

[3] 3.000 Scope of part.

This part prescribes policies and procedures for avoiding improper business practices and personal conflicts of interest and for dealing with their apparent or actual occurrence.

Subpart 3.1 - Safeguards

3.101 Standards of conduct.

3.101-1 General.

Government business shall be conducted in a manner above reproach and, except as authorized by statute or regulation, with complete impartiality and with preferential treatment for none. Transactions relating to the expenditure of public funds require the highest degree of public trust and an impeccable standard of conduct. The general rule is to avoid strictly any conflict of interest or even the appearance of a conflict of interest in Government-contractor relationships. While many Federal laws and regulations place restrictions on the actions of Government personnel, their official conduct must, in addition, be such that they would have no reluctance to make a full public disclosure of their actions. 48 C.F.R. § 3.101-1 (2019).

I provide examples. The fixed fee for a fugitive case is $135. The fixed fee for a shoplifting case is $810. In a non-fixed fee case, the statutory maximum for a misdemeanor case is $2000, and the hourly rate is 90 dollars per hour. A government contract has value.

I respectfully request to stay within the boundaries of a government – contractor relationship. I respectfully request to maintain the appearance of propriety.

It appears that Judge McKenna's first term of appointment ends on October 11, 2020.

I seek appointments to new cases. When I speak to Judge McKenna and Judge Krauthamer, I am speaking to judicial officers.[4]

I decided in favor of disclosing suspicious activity reports in connection with government contracts.

The Federal Acquisition Regulation includes a mandatory disclosure rule. It appears the mandatory disclosure rule does not apply. The mandatory disclosure rule applies to contracts above six million and "the performance period is 120 days or more." 48 C.F.R. § 3.1004 (2019).

In my registration in the System for Award Management, I agree to numerous representations and certifications set forth in the Federal Acquisition Regulation. Other provisions of the Federal Acquisition Regulation, federal statutes, or federal regulations may apply.

---

3.101-2 Solicitation and acceptance of gratuities by Government personnel.

As a rule, no Government employee may solicit or accept, directly or indirectly, any gratuity, gift, favor, entertainment, loan, or anything of monetary value from anyone who (a) has or is seeking to obtain Government business with the employee's agency, (b) conducts activities that are regulated by the employee's agency, or (c) has interests that may be substantially affected by the performance or nonperformance of the employee's official duties. Certain limited exceptions are authorized in agency regulations. 48 C.F.R. § 3.101-2 (2019).

[4] **3.104-1 Definitions.**

*Official* means -

(1)  An officer, as defined in 5 U.S.C. 2104;

(2)  An employee, as defined in 5 U.S.C. 2105;

(3)  A member of the uniformed services, as defined in 5 U.S.C. 2101(3); or

(4)  A special Government employee, as defined in 18 U.S.C. 202. 48 C.F.R. § 3.104-1 (2019).

If no performance issues are alleged, is suspension and/or corrective action an appropriate course of action?

Under the Federal Acquisition Regulation, will I be suspended throughout the executive branch of government?[5]

---

[5] 9.407 Suspension.

9.407-1 General.

(a) The suspending official may, in the public interest, suspend a contractor for any of the causes in 9.407-2, using the procedures in 9.407-3.

(b)

(1) Suspension is a serious action to be imposed on the basis of adequate evidence, pending the completion of investigation or legal proceedings, when it has been determined that immediate action is necessary to protect the Government's interest. In assessing the adequacy of the evidence, agencies should consider how much information is available, how credible it is given the circumstances, whether or not important allegations are corroborated, and what inferences can reasonably be drawn as a result. This assessment should include an examination of basic documents such as contracts, inspection reports, and correspondence.

(2) The existence of a cause for suspension does not necessarily require that the contractor be suspended. The suspending official should consider the seriousness of the contractor's acts or omissions and may, but is not required to, consider remedial measures or mitigating factors, such as those set forth in 9.406-1(a). A contractor has the burden of promptly presenting to the suspending official evidence of remedial measures or mitigating factors when it has reason to know that a cause for suspension exists. The existence or nonexistence of any remedial measures or mitigating factors is not necessarily determinative of a contractor's present responsibility.

(c) Suspension constitutes suspension of all divisions or other organizational elements of the contractor, unless the suspension decision is limited by its terms to specific divisions, organizational elements, or commodities. The suspending official may extend the suspension decision to include any affiliates of the contractor if they are -

(1) Specifically named; and

(2) Given written notice of the suspension and an opportunity to respond (see 9.407-3(c)).

(d) A contractor's suspension shall be effective throughout the executive branch of the Government, unless the agency head or a designee (except see 23.506(e)) states in writing the compelling reasons justifying continued business dealings between that agency and the contractor.

(e)

(1) When the suspending official has authority to suspend contractors from both acquisition contracts pursuant to this regulation and contracts for the purchase of Federal personal property pursuant to

I respectfully request a writing regarding the six issues that I present in writing for review and consideration.

---

FPMR 101-45.6, that official shall consider simultaneously suspending the contractor from the award of acquisition contracts and from the purchase of Federal personal property.

(2) When suspending a contractor from the award of acquisition contracts and from the purchase of Federal personal property, the suspension notice shall so indicate and the appropriate FAR and FPMR citations shall be included.

*[48 FR 42142, Sept. 19, 1983, as amended at 54 FR 4968, Jan. 31, 1989; 54 FR 19816, May 8, 1989; 56 FR 67130, Dec. 27, 1991; 59 FR 67033, Dec. 28, 1994; 84 FR 19845, May 6, 2019]*

2018 RE-ESTABLISHMENT:
CRIMINAL JUSTICE ACT PANEL APPLICATION
SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Every attorney requesting to be considered for inclusion as a member of the Criminal Justice Act ["CJA"] Panel as of the date of its re-establishment in 2018 must complete an application. The deadline for submission of an application is **FRIDAY, JANUARY 19, 2018 by 2:00PM.** Attorneys of all experience levels who are enthusiastic and committed to providing high quality representation in connection with this important work are encouraged to apply. An applicant must be a sworn member of the D.C. Bar to be considered for appointment to the Panel. Each applicant must answer all questions on this application or note specifically if a question is not applicable. **Each question must appear before the answer, and all applications must be typewritten. In addition, the application must be sent by email as an attachment in both Word AND PDF, as set forth below.** Certificates Concerning Discipline from the Office of Bar Counsel of the District of Columbia, and certification that D.C. Bar dues have been paid currently must be included with the application.

**Filing Instructions:**

**(1) Your application must be sent by email as an attachment in Word and PDF format to** applicant@dcsc.gov. **In the subject line of the email list the following: Last name of applicant, first name, middle initial; and**

**(2) One hard copy with all supporting documentation must be submitted c/o Judge Juliet McKenna, Room 1500, Superior Court, 500 Indiana Avenue, N.W., Washington, D.C. 20001 (202-879-0422).**

**(3) Both the e-mailed application and the hard copy must include a passport-style photograph of the applicant on the front page of the application.**

**Applicants must submit the e-mailed application in Word and PDF format, as well as a hard copy application with supporting documentation. Incomplete applications will not be considered. No notice will be provided to the applicant concerning failure to complete the application or to submit the required documentation.**



ATTACH PHOTO HERE

## CJA PANEL APPLICANT QUESTIONNAIRE

1.  Full name (include any former names used), D.C. Bar number and e-mail address.

    **ANSWER:**

    **Full name: Kavita Kalsy**
    **D.C. Bar number: 486725**
    **E-mail address: kkalsy@outlook.com**

2.  If you are a member of any panel for the Superior Court-CJA (Provisional or Full Member), GAL, CCAN, Juvenile, Mental Health, Special Education Advocate or Probate Panels, please state the panel(s) of which you are a member and the date of admission. In addition, if you have previously applied for the CJA Panel or any other panel of attorneys and were not accepted, or were appointed as a Provisional Member but did not become a Full Member, state the year(s) of all of your previous application(s). Also, please describe any additional actions you have undertaken since you were not accepted to a panel that you wish the committee to consider.

    **ANSWER:**

    **I am not currently a member of any panel for the Superior Court.**
    **This is my first application to a panel for the Superior Court.**

3.  Provide your office and home addresses, telephone and fax numbers.

    **ANSWER:**

2

Office Address:
Kavita Kalsy PLLC
1629 K Street, NW, Suite 300
Washington, DC  20006
Telephone: (202) 355-6430
Fax: (202) 331-3759

Home Address:
Kavita Kalsy
1550 7th Street, NW, Apt. 718
Washington, DC 20001
(202) 489-4531

a.  If your office is not in the District of Columbia, state (i) how far it is from the Superior Court of the District of Columbia, (ii) explain where you would meet your clients to discuss their cases.

      **ANSWER: This question is not applicable.**

b.  For all applicants, describe (i) your system for receiving messages from clients, (ii) your arrangements for coverage of your cases both for planned and unplanned absences including the names and contact information of attorneys who have agreed to stand in for you, and (iii) your support staff, if any.

      **ANSWER:**

      **(i) The system for receiving messages from clients is included in a contract with a management organization at the office address. Staff answer the phone during business hours. Staff call my cell phone to check if I am available for the call. If I am not available, the call forwards to voicemail. Voicemails are immediately forwarded by e-mail. During non-business hours, weekends and holidays, calls forward to voicemail. Voicemails are immediately forwarded by e-mail.**

      **(ii) I do not have arrangements for coverage of my cases both for planned and unplanned absences.**

      **I do have a sample agreement for emergency backup services. If I am included as a provisional member of the Criminal Justice Act Panel, I will attend the two week training program sponsored by the Public Defender Service of the District of Columbia. I plan to listen to discussion or inquire during training regarding applicable requirements,**

3

> if any, regarding arrangements for coverage of my cases, both for planned and unplanned absences.
>
> The Government of the District of Columbia issued a Certificate of Organization to Kavita Kalsy PLLC in June 2017. I have not entered into representation agreements, presented in writing, through Kavita Kalsy PLLC.
>
> (iii) Kavita Kalsy PLLC does not have employees who are support staff.

4.  State what percentage of your practice will be dedicated to representation in CJA appointed cases.

    **ANSWER: 90%**

5.  List in reverse chronological order (most recent first) each law school and college you attended, including dates of attendance and the degrees awarded, and describe any honors you received or significant activities, or work, in which you were involved, or attach resume.

    **ANSWER:**

    **The American University, Washington College of Law, Washington, DC**
    **Fall 1994 - Spring 1997**
    **Juris Doctor, May 1997**
    **Joint Degree, Concentration in Business Law**

    **The American University, Kogod School of Business, Washington, DC**
    **Fall 1993, Summer 1996, Fall 1996, and Spring 1997**
    **Master of Business Administration, May 1997**
    **Joint Degree, Concentration in Business Law**

    **The American University, School of Public Affairs, Washington, DC**
    **Fall 1989 - May 1993**
    **Bachelor of Arts, May 1993**
    **Double Major, Economics and CLEG (Communication, Legal Institutions, Economics, and Government)**

6.  Describe in reverse chronological order (most recent first) your work history since you graduated from law school and any other work experience you believe to be relevant, or attach resume.

    **ANSWER:**

4

Kavita Kalsy PLLC, Washington, DC
Sole Member, Attorney, June 2017 to Present

Compliance; DTI/Epiq Systems; HireCounsel; Law Counsel;
Lexolution; Kelly Law Registry; Update Legal; and Special Counsel;
Washington, DC,
Attorney, August 2003 to August 2017
- Evaluated privilege and responsiveness of electronically stored
  information and documents subject to discovery relating to
  representation of business organizations involved in complex
  litigation and federal and state investigations.
- Reviewed electronically stored information of business
  organizations in matters before United States District Courts
  relating to the False Claims Act, the Federal Corrupt Practices
  Act, the Federal Trade Commission Act, and patent
  infringement.
- Reviewed electronically stored information of business
  organizations regarding Requests for Information from federal
  agencies related to the merger review process.
- Reviewed electronically stored information in electronic
  discovery programs such as Relativity.
- Drafted privilege log entries.
- Selected for privilege review teams, quality control teams, and
  team lead.

I list a complete work history by employer and date related to this
work experience at the end of this answer.

D.C. Bar Pro Bono Program, Advice and Referral Clinic,
Washington, DC, Volunteer Attorney, 2006-2015
- Provided brief legal advice and referrals regarding
  bankruptcy, consumer law, employment law, family law,
  immigration, landlord/tenant, public benefits, taxation, and
  wills.
- Drafted motions for pro se litigants to file.
- Participated in about twenty-five Saturday clinics.

D.C. Bar Pro Bono Program, Advocacy and Justice Clinic for Solo
and Small Firm Attorneys, Washington, DC, Volunteer Attorney,
2013-2014
- Represented the Tenant in Brown v. Huff, No. 2013 LTB
  020869 (D.C. Super. Ct. February 24, 2014) (DC Superior
  Court eAccess System)
- Represented the Tenant relating to a Complaint for Non-
  Payment of Rent in about eight hearings including hearings

5

regarding a protective order, a Bell Hearing, sanctions, discovery, settlement, surrender of possession and monetary judgement, and disbursement of funds from the Court Registry during September 2013 through February 2014.

**Palmer Legal Staffing, Attorney, March 2010, Washington, DC**
- Drafted communications regarding federal procurement law.

**Paul, Weiss, Rifkind, Wharton & Garrison, LLP; Washington, DC, Staff Attorney, November 2005 to February 2006**
- Evaluated privilege and responsiveness of documents subject to discovery relating to representation of a business organization.

**U.S. Department of the Treasury, Bureau of the Public Debt, Office of the Chief Counsel, Washington, DC and Parkersburg, WV Attorney-Adviser, September 1998 to April 2003**
- Represented Public Debt in its mission to borrow the money needed to operate the Federal Government and to account for the resulting debt.
- Represented Public Debt in communications with the Financial Management Service, the U.S. Department of the Treasury, the Federal Reserve Bank of New York, the U.S. Government Accountability Office, and the U.S. Patent and Trademark Office regarding matters relating to appropriations, audits, bid protests, fiscal law, government securities, intellectual property, and procurement.
- Prosecuted service mark and trademark applications before the U.S. Patent and Trademark Office.
- Represented Public Debt in bid protests involving federal procurements before the U.S. Government Accountability Office.
- Received three Performance Awards for Ratings of Outstanding, 1999-2001
- Declined to accept a directed reassignment to Parkersburg, WV. Separated from federal service in April 2003.

**National Association of Securities Dealers, Division of Enforcement, Rockville, MD, Legal Intern, January to April 1997**

**West Group, Washington, DC, Westlaw Representative, 1995-1997**

I list a complete work history by employer and date related to the following work experience.

Compliance; DTI/Epiq Systems; HireCounsel; Law Counsel; Lexolution; Kelly Law Registry; Update Legal; and Special Counsel; Washington, DC,
Attorney, August 2003 to August 2017

DTI Global/Epiq Systems (DeNovo Legal LLC d.b.a. Epiq Document Review Solutions): August 8, 2017 to August 11, 2017
HireCounsel: June 19, 2017 to June 23, 2017
Epiq Systems (DeNovo Legal LLC d.b.a. Epiq Document Review Solutions): January 9, 2017 to April 24, 2017
Epiq Systems (DeNovo Legal LLC d.b.a. Epiq Document Review Solutions): October 13, 2016 to October 20, 2016
Special Counsel: August 10, 2016 to September 9, 2016
Special Counsel: July 21, 2016 to August 1, 2016
Special Counsel: July 11, 2016 to July 15, 2016
Special Counsel: June 28, 2016 to June 30, 2016
Compliance: September 28, 2015 to June 21, 2016
Special Counsel: July 7, 2015 to September 15, 2015
Special Counsel: June 8, 2015 to June 28, 2015
Lexolution: May 31, 2015 to June 4, 2015
Law Counsel: May 22, 2015 to June 1, 2015
Lexolution: March 11, 2015 to May 13, 2015
Lexolution: February 25, 2015 to February 27, 2015
Compliance: August 28, 2014 to February 20, 2015
Compliance: June 11, 2014 to August 11, 2014
Compliance: April 14, 2014 to June 6, 2014
Compliance: March 20, 2014 to April 7, 2014
Lexolution: February 5, 2014 to February 10, 2014
Lexolution: January 6, 2014 to January 26, 2014
Lexolution: November 15, 2013 to December 26, 2013
HireCounsel: September 11, 2013 to October 28, 2013
Special Counsel: September 12, 2011 to August 2, 2013
Lexolution: August 8, 2011 to August 28, 2011
Special Counsel: April 4, 2011 to May 19, 2011
Special Counsel: March 30, 2011 to April 2, 2011
Special Counsel: March 18, 2011 to March 19, 2011
Special Counsel: February 28, 2011 to March 15, 2011
Special Counsel: February 7, 2011 to February 21, 2011
Special Counsel: December 27, 2010 to December 28, 2010
HireCounsel: October 29, 2010 to December 22, 2010
Special Counsel: July 7, 2010 to October 22, 2010
Special Counsel: April 9, 2010 to June 15, 2010

**Special Counsel: February 19, 2010 to February 24, 2010**
**Special Counsel: February 2, 2010 to February 4, 2010**
**Special Counsel: November 2, 2009 to December 10, 2009**
**Special Counsel: September 14, 2009 to October 19, 2009**
**Special Counsel: August 10, 2009 to September 2, 2009**
**Special Counsel: July 31, 2008 to July 31, 2009**
**Special Counsel: July 15, 2008 to July 25, 2008**
**HireCounsel: February 4, 2008 to June 27, 2008**
**HireCounsel: October 2007 to January 2008**
**Update Legal: July 2007 to September 2007**
**Update Legal: February 2007 to April 2007**
**HireCounsel: December 2006 to January 2007**
**Lexolution: July 2006 to September 2006**
**Update Legal: April 2006 to May 2006**
**HireCounsel: June 2005 to September 2005**
**Update Legal: April 2005 to May 2005**
**Ajilon Legal: February 2005 to April 2005**
**Update Legal: January 2005**
**Ajilon Legal: September 2004 to November 2004**
**Kelly Law Registry: February 2004 to September 2004**
**Ajilon Legal: December 2003 to January 2004**
**Ajilon Legal: July 2003 to August 2003**

7.  Provide the date of your admission to practice in the District of Columbia. All applicants must provide a Certificate Concerning Discipline from the Office of Bar Counsel of the District of Columbia and certification that D.C. Bar dues have been paid, dated within 30 days of the submission of the application.

    **ANSWER:  June 12, 2006**

8.  List all other bars to which you have been admitted to practice, with dates of admission. For each, state whether you have been continuously active and in good standing from your admission to the present. If not, explain in detail.

    **ANSWER:**

    **Massachusetts. I was admitted to practice law in the Commonwealth of Massachusetts on June 18, 1998. After admission, I have not been continuously active. After admission, starting in 1999 through the present, I have continuously selected inactive status in my annual attorney registration statement. I have been continuously inactive and in good standing.**

    **New York. I was to admitted to practice law in the State of New York by the Appellate Division of the Supreme Court, Third Judicial**

Department, on June 23, 1998. I have been continuously active and in good standing.

New Jersey. I was admitted to practice law in the State of New Jersey on August 14, 1998. I have been continuously active and in good standing.

9. List in reverse chronological order (most recent first) the continuing legal education programs that you have attended within the last four years that were related to criminal law, criminal procedure, trial practice, evidence, prisoners' rights, or constitutional law, or any clinical training that you have had during the last four years.

ANSWER:

Thursday, January 11, 2018 – "Criminal ESI:" Electronic Information in Criminal Investigations and Proceedings (New York State Bar Association Continuing Legal Education Live and Webcast – Webcast Registration)

Wednesday, November 15, 2017 – Craig Ball Workshop on How to Discover and Preserve Evidence on a Cell Phone (The District of Columbia Bar Continuing Legal Education Program)

Thursday, October 26, 2017 – Defending the Juvenile Client (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2017 Fall Training Program)

Tuesday, October 24, 2017 – Trying Gun and Drug Cases: Effective Strategies for Winning Your Case (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2017 Fall Training Program)

Thursday, October 19, 2017 – Common Witness and Evidentiary Issues in the Defense Case (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2017 Fall Training Program)

Tuesday, October 17, 2017 – Fourth Amendment Litigation: Winning Strategies through Cross-Examination and Impeachment (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2017 Fall Training Program)

Thursday, October 12, 2017 – Immigration Consequences of Criminal Convictions in DC – What Criminal Defense Lawyers Need to Know for Both Your Clients and Witnesses (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2017 Fall Training Program)

**Tuesday, October 10, 2017 – IRAA (Incarceration Reduction Amendment Act): Major Changes for Juveniles Charged as Adults and Those Already Sentenced for Title 16 Crimes (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2017 Fall Training Program)**

**Thursday, July 27, 2017 – Litigating Police Misconduct (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2017 Summer Training Program)**

**Tuesday, July 25, 2017 –- The Juvenile Client (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2017 Summer Training Program)**

**Thursday, July 20, 2017 – DNA 201: Advanced Principles of Forensic Data Analysis (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2017 Summer Training Program)**

**Tuesday, July 18, 2017 – Defending Assault Cases (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2017 Summer Training Program)**

**Thursday, July 13, 2017 –- Effective Cross-Examination: Exploring Witness Bias (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2017 Summer Training Program)**

**Tuesday, July 11, 2017 – DNA 101: Basic Principles of Forensic DNA Analysis (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2017 Summer Training Program)**

**Wednesday, May 17, 2017 –- Emerging Issues in eDiscovery, Part 5: Information Governance & Cybersecurity (The District of Columbia Bar Continuing Legal Education Program)**

**Thursday, March 02, 2017 – Litigating Synthetic Cannabinoid Cases (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2017 Winter Training Program)**

**Thursday, February, 23, 2017 – Hot Topics Associated With The Use Of Video In Traffic Cases (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2017 Winter Training Program)**

**Thursday, February 16, 2017 –- What To Do When You Get A DNA Case (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2017 Winter Training Program)**

**Thursday, February 09, 2017 – The Intersection of Education and Justice: Overcoming Barriers Facing Older Students Involved in DC's**

Juvenile and Criminal Justice Systems (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2017 Winter Training Program)

Monday, November 14, 2016 – Advanced Legal Research (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2016 Fall Training Program)

Thursday, October 27, 2016 – Plea Bargaining in Juvenile Court (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2016 Fall Training Program)

Thursday, October 20, 2016 – Guns, Drugs, and DV Cases: How Common Charges Affect Your Immigrant Client, Plus a Discussion of Avenues of Cross-Examination for the Non-Citizen Witness (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2016 Fall Training Program)

Tuesday, October 18, 2016 –  Brady, Discovery, and Recent Changes in Criminal Procedures: Getting the Most out of our Discovery Rules (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2016 Fall Training Program)

Thursday, October 13, 2016 – How to Tell a Story and Present the Evidence Effectively: The ABC's of a Winning Opening Statement (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2016 Fall Training Program)

Tuesday, October 11, 2016 – DNA 101: Basic Principles of Forensic DNA Analysis (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2016 Fall Training Program)

Thursday, August 4, 2016 – Hot Topics Associated with the Use of Video in Traffic Cases (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2016 Summer Training Program)

Thursday, July 21, 2016 – Navigating the Social Media World (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2016 Summer Training Program)

Thursday, July 14, 2016 –Defending the Juvenile Drug Case (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2016 Summer Training Program)

Thursday, July 30, 2015 – Staying on Top of your Ethical Obligations (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2015 Summer Training Program)

> **Tuesday, July 28, 2015 – Appellate Court Roundup (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2015 Summer Training Program)**
>
> **Tuesday, July 21, 2015 – I Represent a Witness: Now What? (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2015 Summer Training Program)**
>
> **Tuesday, July 14, 2015 – Impeachment by Prior Inconsistent Statements and Their Use during Jury Deliberation (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2015 Summer Training Program)**
>
> **Tuesday, July 7, 2015 – Cross-Examination: Documents and Evidence Issues (The Public Defender Service for the District of Columbia, Deborah T. Creek Criminal Practice Institute, 2015 Summer Training Program)**

10. If you are a current CJA Panel member, list the dates that you signed up to receive appointments in C10 during calendar year 2017. Please note if the date fell on a holiday or Saturday. Please also note whether there have been any extenuating circumstances that have limited your ability to pick up cases.

> **ANSWER: I am not a current CJA Panel member.**

11. Summarize your litigation and courtroom experience in the Superior Court over the past four years, including:

   a. An estimate of the percentage of cases prosecuted by the United States and the percentage of cases prosecuted by the District of Columbia;
   b. An estimate of the number of criminal cases in which you were primary counsel for the defendant (Please do not include post-conviction representation):
   1. In how many of these cases were you counsel in a case that was tried to a jury?
   2. In how many of these cases were you counsel in a case that was tried to a judge?
   3. In how many of these cases did you withdraw or were you removed as counsel?
   c. If you currently are a full CJA Panel member, the number of times you have allowed Provisional Members to be second chairs in your trials.
   d. An estimate of the number of times you have sat as second chair in a jury trial, with a description of the role you played during the trial.
   e. Summarize this litigation experience prior to the past four years.

> **ANSWER:**
>
> **I represented a defendant in a case in the Superior Court of the District of Columbia, Civil Division, Landlord and Tenant Branch.**

Events were held during the past four years and prior to the past four years. I summarize the litigation and courtroom experience in the Superior Court during the past four years. I summarize the litigation experience prior to the past four years in the answer to question 11(e). I represented the defendant in about eight hearings in 2013 and 2014, and two of the eight hearings were held between January 2014 through February 2014.

I represented the Tenant in Brown v. Huff, No. 2013 LTB 020869 (D.C. Super. Ct. February 24, 2014) (DC Superior Court eAccess System). I represented the Tenant relating to a Complaint for Non-Payment of Rent in two hearings from January 2014 to February 2014 regarding surrender of possession and monetary judgement and disbursement of funds from the Court Registry.

a. 0%
b. 0
   1. 0
   2. 0
   3. 0
c. I am not a full CJA Panel member. This question is not applicable.
d. 0
e. I represented a defendant in a case in the Superior Court of the District of Columbia, Civil Division, Landlord and Tenant Branch. Events were held prior to the past four years and during the past four years. I have summarized the litigation experience during the past four years in the answer to question 11. I summarize the litigation experience prior to the past four years. I represented the defendant in about eight hearings in 2013 and 2014, and six of the eight hearings were held between September 2013 to December 2013.

I represented the Tenant in Brown v. Huff, No. 2013 LTB 020869 (D.C. Super. Ct. February 24, 2014) (DC Superior Court eAccess System). I represented the Tenant relating to a Complaint for Non-Payment of Rent in six hearings from September 2013 to December 2013 regarding the protective order, a Bell Hearing, sanctions, discovery, and settlement.

12. Summarize your litigation and courtroom experience in other jurisdictions, if any, over the past four years, including an estimate of the number of criminal cases in which you were primary counsel for the defendant. (Please do not include post-conviction representation).

   a. Approximately, in how many of these cases were you counsel in a case that was tried to a jury?

    b. Approximately, in how many of these cases were you counsel in a case that was tried to a judge?

    c. Approximately, in how many of these cases did you withdraw or were you removed as counsel?

    d. Summarize this litigation experience prior to the past four years.

       **ANSWER:**

       **I do not have litigation and courtroom experience in other jurisdictions during the past four years or prior to the past four years.**

13.    Describe the five most significant criminal cases in which you have served as counsel over the past four years. For each of those matters, provide:

    a. The case name;

    b. The case number;

    c. The court where the case was heard;

    d. The name of the judge who presided over the case;

    e. Your role in the case and the client whom you represented (e.g. lead counsel for the defendant);

    f. Whether the case went to trial; and

    g. A description of the legal or factual issues involved or why the case is significant.

       **ANSWER:  I have not served as counsel in criminal cases.**

14.    Summarize any litigation experience as defense counsel in post-conviction proceedings in the Superior Court over the past four years.

       **ANSWER:**

       **I do not have litigation experience as defense counsel in post-conviction proceedings in Superior Court.**

15.    Summarize your litigation experience in appellate courts over the past four years, identifying the courts in which you were appellate counsel and the approximate number of cases in each court in which you submitted an appellate brief.

       **ANSWER: I do not have litigation experience in appellate courts.**

16.    List up to five D.C. Superior Court judicial officers or other references, including other judicial officers, who have the most information about your qualifications to serve on the Panel based upon your work over the past four years. If you believe the judicial officer's knowledge is based primarily on a case(s) in which you appeared, please identify the case or cases. If the judicial officer's or reference's knowledge about your qualifications is not related to a case, please provide the

basis for the knowledge about your qualifications. (Note: any reference listed or other persons with relevant knowledge of the applicant's qualifications who come to the attention of the CJA Panel or CJA Advisory Committees may be contacted. Please provide telephone numbers for all references who are not D.C. Superior Court judicial officers.)

**ANSWER:**

**I list judicial officers based on a case in the Superior Court of the District of Columbia, Civil Division, Landlord and Tenant Branch. The case is: Brown v. Huff, No. 2013 LTB 020869 (D.C. Super. Ct. February 24, 2014) (DC Superior Court eAccess System)**

**The question refers to a date range of the past four years. I entered an appearance in the case on September 26, 2013. I list judicial officers who may have knowledge of my qualifications based on hearings that were held in late January 2014 and February 2014.**

**Judge Clark**
**Judge Motley**

**I also list judicial officers who may have knowledge of my qualifications based on hearings that were held from September 26, 2013, through December 2013.**

**Judge Gardner**
**Judge Josey-Herring**
**Judge Kravitz**

17.   [FOR NEW APPLICANTS AND CURRENT PROVISIONAL PANEL MEMBERS ONLY] Are you interested in being considered as a provisional member of the CJA Panel?  (Being a provisional member of the CJA Panel would mean you would receive only appointments to misdemeanor cases until such time as the CJA Panel Committee determines you are qualified to receive appointments to felony cases. As with CJA Panel members, the Committee may determine at any time that a Provisional Member should receive no further appointments.)

**ANSWER:**

**I am interested in being considered as a provisional member of the CJA Panel.**

18.   Since your first admission to the Bar, state whether you have ever:

   a.   been convicted of a crime;

   b.  been sued by a client or been a party or otherwise involved in any other legal proceedings;

   c.  as a result of a motion filed in a criminal case, been found by a judge to have rendered ineffective assistance of counsel to a defendant; or

   d.  been the subject of a formal or informal complaint to any court, administrative agency, bar association or disciplinary committee, or other professional group in the District of Columbia or elsewhere, regardless of the outcome.

If so please describe the circumstances and the result.

**ANSWER:**

   **a.  I have not been convicted of a crime.**

   **b.  I have not been sued by a client or been a party or otherwise involved in any other legal proceedings.**

   **c.  No motion has been filed in a criminal case regarding ineffective assistance of counsel to a defendant.**

   **d.  I have not been the subject of a formal or informal complaint to any court, administrative agency, bar association or disciplinary committee, or other professional group in the District of Columbia or elsewhere.**

19.    Please specify any languages other than English in which you are fluent.

**ANSWER:**

**I am not fluent in languages other than English. I am not fluent in Spanish.**

20.    Pursuant to Superior Court Administrative Orders, attorneys selected to represent indigent clients on the CJA Panel are expected to timely satisfy their continuing legal education requirements on an annual basis as set forth by the Chief Judge, and failure to do so results in removal from the Panel. Are you willing to satisfy all CLE requirements in order to maintain your status on the Panel?

**ANSWER: YES**

21.    Pursuant to Administrative Orders, the Court sets an annual cap for attorney compensation for all appointed representation. Do you agree to comply with this Order and any subsequent Order setting the annual cap for compensation, and do you understand that violation of any such Order may result in your removal from the CJA panel?

**ANSWER: YES**

22.    As a member of the Panel you will be expected to provide representation to persons charged in traffic and District of Columbia prosecuted cases. Do you

agree to make yourself available for appointment to traffic and District of Columbia prosecuted cases and to provide representation in all traffic and District of Columbia cases to which you are appointed?

**ANSWER: YES**

23.    As a member of the Panel you will be expected to make yourself available for appointment twelve times a year, including one Saturday or holiday, absent extenuating circumstances. Do you agree to make yourself available for appointment twelve times a year, including one Saturday or holiday, when the Court's arraignment court is making assignments?

**ANSWER: YES**

24.    [FOR NEW APPLICANTS ONLY] Attorneys selected as new members of the Provisional Panel will be expected to attend a two week training program sponsored by the Public Defender Service of the District of Columbia prior to being eligible to accept appointments. There is no cost for the training, but attendees will not be financially compensated for their attendance. The two week training will be held within three weeks of an applicant's admission to the Provisional Panel by Administrative Order. If selected as a new member of the Provisional Panel do you agree to make yourself available to attend this training program?

**ANSWER: YES**

25.    [FOR NEW APPLICANTS ONLY] If you are currently employed at another position and are accepted to the Panel, please describe the process you will undertake to make yourself available for CJA appointments and when you would expect to be able to accept such appointments.

**ANSWER: I am not currently employed at another position.**

## CERTIFICATION

    I declare under penalty of perjury under the laws of the United States that the answers that are provided in the CJA Panel Application are true and accurate to the best of my knowledge and belief. Further, I certify that I am a member in good standing of the District of Columbia Bar.

1/19/2018
Date

_Signature_

## CJA APPLICATION CHECKLIST- ATTACHMENTS

☑ Photo

☑ D.C. Certificate Concerning Discipline

☑ Certification of D.C. Bar Dues

☐ Other (please specify)

18



# OFFICE OF DISCIPLINARY COUNSEL

Hamilton P. Fox, III
*Disciplinary Counsel*

Elizabeth A. Herman
*Deputy Disciplinary Counsel*

*Senior Assistant Disciplinary Counsel*
Jennifer P. Lyman
Julia L. Porter

*Assistant Disciplinary Counsel*
Joseph N. Bowman
Gayle Marie Brown Driver
Jerri U. Dunston
Jelani C. Lowery
Becky Neal
Dolores Dorsainvil Nicolas
Sean P. O'Brien
Joseph C. Perry
William R. Ross
Clinton R. Shaw, Jr.
H. Clay Smith, III
Caroll Donayre Somoza
Traci M. Tait

*Senior Staff Attorney*
Lawrence K. Bloom
Hendrik deBoer

*Manager, Forensic Investigations*
Charles M. Anderson

*Senior Forensic Investigator*
Kevin E. O'Connell

### CERTIFICATE CONCERNING DISCIPLINE, AND/OR ADMINISTRATIVE SUSPENSION

The undersigned is Senior Assistant Disciplinary Counsel for the District of Columbia Bar, having been appointed by the Board on Professional Responsibility ("Board") pursuant to Rule XI, § 4(e)(2), of the Rules of the District of Columbia Court of Appeals Governing the Bar. As such, this office is the custodian of the records of the Board and has access to the membership records of the unified District of Columbia Bar.

On June 12, 2006, Kavita Kalsy was admitted to practice in the District of Columbia and currently is an active member in good standing of the Bar.

No discipline has been imposed upon this attorney nor has Disciplinary Counsel filed a petition seeking discipline against this attorney. No complaint has been filed, upon which basis, this attorney has been required to respond to a formal investigation by Disciplinary Counsel.

Jennifer Lyman
Senior Assistant Disciplinary Counsel

Dated: January 3, 2018
JL:snl

---

*Serving the District of Columbia Court of Appeals and its Board on Professional Responsibility*
515 5th Street NW, Building A, Room 117, Washington, DC 20001 ▪ 202-638-1501, FAX 202-638-0862



D I S T R I C T   O F   C O L U M B I A   B A R

12/28/2017

Ms. Kavita Kalsy
1629 K Street NW, Ste. 300
Washington, DC 20006

To Whom It May Concern:

Ms. Kavita Kalsy was admitted to the District of Columbia Bar on 06/12/2006 and currently holds an Active membership status. Annual membership dues are paid in full through 07/01/2018.

**Please note that this letter is only a verification of admission to the DC Bar and current membership status. This notice shall not be used as a Certificate of Good Standing or Certificate Concerning Discipline\*.**

If you have any questions, please contact Membership via phone at 202-626-3475, toll-free 1-877-333-2227 ext. 3475 or email to memberservices@dcbar.org.

Sincerely,

Natasha Ghent-Rodriguez
Director of Membership
District of Columbia Bar

*\* If you require a Certificate of Good Standing, please contact the Committee on Admissions at the DC Court of Appeals. There is currently a $5.00 fee for this service. They may be reached by phone at 202-879-2710. If you require a Certificate Concerning Discipline, please contact the Office of Disciplinary Counsel. They may be reached by phone at 202-638-1501.*



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**

**WASHINGTON, D.C.  20001-2131**

CERTIFIED MAIL

May 25, 2022

Kavita Kalsy
300 New Jersey Ave, NW
Suite 900
Washington, DC 20001

ALSO SENT VIA EMAIL:  kavita@kavitakalsy.com

Re: Suspension or Removal from Criminal Justice Act Panel

Dear Ms. Kalsy:

As you know from previous correspondence, we have been appointed to decide whether you should be suspended or removed from the Criminal Justice Act Panel, and we will conduct an in-person hearing on June 15, 2022 at 4:15 pm in Courtroom 201.

If you wish to make a written submission or otherwise present any documentary evidence for the Committee's review, we ask that you do so by June 10, 2022.  Please email the materials to the members of the Committee and to Judges Brandt and Anderson: Anthony.epstein@dcsc.gov; todd.edelman@dcsc.gov; Julie.becker@dcsc.gov; rainey.brandt@dcsc.gov; and Jennifer.anderson@dcsc.gov.

Sincerely,

Judge Becker

Judge Edelman

Judge Epstein